**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

IN RE:

      ANDREW ECONOMAKIS        *      Case No.: 18-16585
                                 *
                                 *
            Debtor.           *
*      *      *      *      *      *      *

## DEBTORS DISCLOSURE STATEMENT

### 1. INTRODUCTION

Debtor and Debtor-In-Possession ANDREW ECONOMAKIS filed a petition for reorganization under chapter 11 of Title 11 of the U.S. Code in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division, on May 15, 2018.

Debtor now seeks, with the aid of this document, to have the Court confirm, the Debtor's Plan of Reorganization (the "Plan") filed in this case on December 12, 2018, which creditors will receive with this Disclosure Statement after the Disclosure Statement has been approved by the Court.

### II. PREPARATION AND PURPOSE OF THIS STATEMENT AND DISCLAIMER

This Disclosure Statement is prepared and submitted in compliance with 11 U.S.C. § 1125, and F. R. Bankr. P. 3016 and 3017. The purpose of the Disclosure Statement is to supply the Debtor's creditors with information sufficient to enable them to make an informed judgment as to whether they should vote for or against the Plan; it may not be used for any other purpose. In deciding whether to accept the Plan, you should not rely on any other representations or inducements made to secure such acceptance. Any representations, other

1

than as set forth herein, made to secure acceptance of the Plan should be reported to the undersigned counsel, the Court, and the Office of the U.S. Trustee.

The information contained in this Disclosure Statement has been supplied by the Debtors but has not been subjected to a certified audit.  Nevertheless, reasonable efforts have been made to present accurate information.

In addition to reading this Disclosure Statement, you should also read the Plan itself. The Court's approval of this Disclosure Statement is not a decision by the Court on the merits of the Plan.  After this Disclosure Statement has been approved by the Court, you will receive with the Disclosure Statement and Plan, a Ballot on which you should indicate your acceptance or rejection of the Plan, based upon the terms of the Plan and the information contained in this Disclosure Statement.

All terms not specifically defined in the Disclosure Statement shall have the same meanings as they do in the Plan.

III. <u>VOTING REQUIREMENTS FOR PLAN CONFIRMATION</u>

In general, in order for the Plan to be confirmed by the Court (after which it becomes binding on the Debtor and his creditors), it must first be accepted by creditors holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims that actually vote in each impaired class of Claims.  However, if the Plan is not accepted by all of the impaired classes of Claims but is accepted by at least one such impaired class, then the Court may nevertheless confirm the Plan by way of a "cram-down" if the Court finds that it does not discriminate unfairly and is fair and equitable with respect to each impaired class that did not accept the Plan.  The availability of a cram-down is a legal matter to be resolved in the context of a hearing on confirmation of the Plan.

Only creditors whose Claims are not listed as disputed, contingent, or unliquidated in the schedules that the Debtor filed, or creditors who have timely filed a Proof of Claim with the Court that was not disallowed as of the date of the confirmation hearing on the Plan, have the right to vote.

In the event that the Plan does not satisfy all of the requirements of Section 1129(a) of the Bankruptcy Code because it does not meet the Minimum Voting Threshold, the Bankruptcy Court nevertheless may confirm the Plan under the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code if all of the other provisions of Section 1129(a) of the Bankruptcy Code are met. In such event, the Proponent intends to undertake to have the Bankruptcy Court confirm the Plan under the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code.

In order to confirm a plan over the dissenting vote of an impaired Class under Section 1129(b) of the Bankruptcy Code that satisfies the remaining provisions of Section 1129(a) of the Bankruptcy Code, the Bankruptcy Court, on request of a proponent, "shall" confirm a plan if the plan does not discriminate unfairly, and is fair and equitable with respect to each Class of Claims or interests that is impaired under, and has not accepted, the plan. For purposes of Section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" with respect to a Class of unsecured creditors if, at a minimum, it satisfies the "absolute priority rule" and the "best interests of creditors test."

(i) Absolute Priority Rule

To satisfy the absolute priority rule, a plan must provide that the holder of any Claim or equity interest that is junior to the Claims of the dissenting Class will not receive or

retain under the plan on account of such junior Claim or interest any property unless the Claims of the dissenting Class are paid in full.

Debtor believes that the Plan satisfies the absolute priority rule, as any property being retained by the Debtor is exempt and not property of the bankruptcy estate.

(ii) Best Interest of Creditors Test

Under the best interest of creditors test, the Plan is confirmable if, with respect to each impaired Class of Claims or Equity Interests, each holder of an Allowed Claim or Allowed Equity Interest in such Class has either (i) accepted the Plan, or (ii) receives or retains under the Plan, on account of its Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. In the instant case, the Debtor has no property that is non-exempt that would be liquidated for the benefit of the unsecured creditors. Both homes owned by the Debtor are owned with his spouse as tenants by the entirety and there is no joint debt. Any personal property that the Debtor owns falls below the threshold for exemptions. Debtors plan will provide for a small distribution to unsecured creditors under the plan, but this amount will be more than they would receive in a chapter 7 liquidation.

The proposed plan also must comply with 1129(a)(15). Under the proposed plan, even if the holder of an allowed unsecured claim objects, the plan shall still be confirmed because the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor to be received during the 5-year period beginning on the date the first payment is due. Alternatively, the value of the property, as of the

effective date, to be distributed under the plan on account of any such allowed unsecured claim is not less than the amount of such claim. Under the proposed plan, Debtors will be paying all of their disposable income into the  Plan.

The following exhibits are attached and incorporated by reference:

1.      A list of creditors and the proposed treatment/payment.

(i)      A list of Real and Personal Property (Debtors' Schedules A & B).

(ii)     Most recent Debtor's Monthly Operating Report

(iii)    Projected monthly income and expenses statement.

IV. <u>FINANCIAL HISTORY AND DESCRIPTION OF DEBTORS</u>

Debtor currently has a home in Potomac, MD and Sanibel, Florida. It is the intention of the Debtor to sell the home in Potomac, MD and relocate full time to Sanibel, Florida. Mr. Economakis is currently working as a consultant and receiving approximately $7,000 per month before taxes. In addition, the Debtor's Spouse pays certain joint expenses with Mr. Economakis as reflected on the budget. The Debtor intends to list the Potomac, MD property for sale by April 1, 2019 and anticipates selling the property by July, 2019.

The primary reason for the Debtors financial difficulties arose from the actions of Lafayette Federal Credit Union, the primary lender on their principal residence. Lafayette has continued to press for payment under their notes and deeds of trust, and charged an exorbitant amount of attorney's fees, etc., with little to no explanation, causing continued financial hardship for the debtor. The Debtor is current on the payments of his mortgage, but because of the large backup of attorney's fees, interest and costs, Lafayette continues to pursue the Debtor aggressively. Lafayette also precipitated the need for the filing as they had the

property scheduled for foreclosure shortly after the Debtor filed the instant case. The Debtor has remained current on all obligations post-bankruptcy, including payments on the Potomac and Sanibel properties, as well as all regular monthly payments.

## V. CHAPTER 11 OPERATIONS

Since the commencement of the case, Debtor has conducted his affairs as Debtor-in-Possession.  He is current on all of financial reporting obligations in this case.

## VI. EFFECT OF CHAPTER 7 LIQUIDATION

A. In General.  The requirement for confirmation of the Plan by the Court are contained in 11 U.S.C. § 1129.  Section 1129(a)(7) provides that, with respect to each impaired class of claims, each holder of a claim therein must either have accepted the Plan, or will receive under the Plan at least as much as would be received if the Debtors' assets were liquidated as of the Plan's Effective Date and the liquidation proceeds distributed as they would be under chapter 7 of the Code.  Accordingly, the following analysis is provided to enable creditors to determine what, if anything, they would receive if the Debtor's assets were liquidated and the liquidation proceeds distributed to them under chapter 7 of the Code.

B. Liquidation Analysis.

As disclosed on Schedules A and B on file with this Court, there may be a small amount of equity in both the Potomac, MD and Sanibel, FL properties, however, both properties are owned by Mr. Economakis and his wife, as tenants by the entirety. Mrs. Economakis is not part of the instant bankruptcy and they have no joint unsecured creditors. The Debtors intend to sell the Potomac, MD property, but there will be no distribution from the sale of this property to unsecured creditors, even in the event that there is equity in the property, as any equity is exempt

6

under the tenants-by-the-entirety exemption. The Debtor further believes there is no non-exempt personal property which he owns.

Based upon the Debtors' schedules and proofs of claim on file with this Court, the Debtor owes approximately $ **2,572,976.85 in secured debts; priority debt of approximately $20,000; and $991,137.70 in unsecured debt, $958,000 which is disputed with one creditor, Lafayette Federal Credit Union.** Additionally, Debtor estimates they will have administrative expenses to bankruptcy counsel of approximately $10-15,000.00, which includes pre-confirmation fees to be paid. The Debtor may have fees for an accountant, but at this time, there are no professional fees outstanding. In addition, Jeremy Lichtenstein, a real estate employed by Re/Max Realty Services, Inc., whom the Debtor intends to file a motion to employ for, will be entitled to a commission pursuant to the application to be filed with this Court upon the sale of the Potomac, MD property. Other than these professional fees, there are no other unpaid post-petition expenses, taxes, etc.

In a chapter 11 individual case, property of the estate includes, in addition to the property specified under 11 U.S.C. § 541- (1) all property of the kind specified in Section 541 debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7, 12 or 13, whichever occurs first. In this case, the unsecured creditors would receive nothing under a chapter 7 liquidation, so any distribution under the chapter 11 plan would be more.

## VII. <u>SUMMARY OF PROPOSED PLAN</u>

The Plan proposes, in accordance with 11 U.S.C. §§ 1123 & 1129, the following treatment to the Debtors creditors, whose claims are segregated into 6 classes.

In addition to the 6 classes of claims are the Debtors unclassified creditors, including the Office of the U.S. Trustee for ongoing quarterly fees, the accountant's fees, and professionals appointed by the Court to render services on behalf of the Debtors. The claims of administrative creditors will be paid in full, if not sooner paid, on the later of the Plan's Effective Date or 11 days after any such administrative expense is approved by the Court or upon such other terms as may be agreed upon by the holder of such administrative expense claim and the Debtors, except that:

(iv) the Debtor's post-petition obligations incurred in the ordinary course of business have been and will continue to be paid in the ordinary course of business without any order of the Court and are not intended to be dealt with under the Plan, and

(v) the compensation of professional persons is further permitted by applications to the Court for allowance and payment, but is subject to applicable orders of the Court, and the Debtor may pay any such interim allowances before the Plan's Effective Date.

Post-confirmation and until the case is closed, dismissed or converted, the Debtor will continue to pay accruing quarterly fees to the Office of the U.S. Trustee.

The unclassified claims are the attorney's fees and accountant's fee.

<u>Priority Tax Claims:</u> Priority Tax Claims are unsecured claims of governmental units for taxes that are entitled to priority in accordance with Section 507(a)(8) of the Bankruptcy Code. The Debtor is not aware of any priority tax claim.

8

If the Debtor fails to make any payment to any of the taxing authorities within fourteen (14) days of the due date of such payment, if the Debtor fails to file any required tax return by the due date of such return, or if the Debtor fails to make any payments due to the taxing authorities under this plan, then the taxing authority may declare the Debtor in default. If the taxing authority declares the debtor to be in default, the entire imposed tax liability to be paid under the plan, together with any current unpaid liabilities, shall become due and payable immediately upon written notice to the Debtor. The Debtor may cure any default by paying the amount due within fourteen (14) days of the notice of default.

If the Debtor does not make full payment within fourteen (14) days of such demand, then the taxing authority may collect any unpaid liabilities through administrative collection provisions. All notices of default should be sent to the Debtor at Attn: Andrew Economakis, 5058 Joewood Drive, Sanibel, Florida 33957.

The 6 classes of claims, none of which are impaired based on the current proof of claims filed, are as follows.

In Class 1 is the Claim of Branch Banking & Trust Company (hereinafter, "BB&T"), which is secured by a deed of trust against the Residence in Potomac, MD at 11301 South Glen Road, Potomac, MD 20854. The debt is approximately $199,719.73 based on a proof of claim filed by the Creditor. The property has a value of approximately $1,800,000.00. The Debtor will be selling this property to pay off the balance owed to BB&T (and other creditors), including all arrears. In the interim, the Debtor will continue to pay BB&T its regular monthly amount owed. Until BB&T has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the

9

underlying loan documents against the Residence and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. This class is unimpaired.

In Class 2 is the Claim of EagleBank, which is secured by a deed of trust against the property 5058 Joewood Drive, Sanibel, Florida. The debt is approximately $54,455.99. The property value is estimated to be approximately $1,095,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the terms of the loan agreement and applicable non-bankruptcy law. Until EagleBank has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the Residence and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. The Debtor shall also make monthly payments to EagleBank. This class is unimpaired.

In Class 3 is the Claim of Towd Point Mortgage Trust 2017-5, U.S. Bank Nation (hereinafter "Towd Point")[1], which is secured by a deed of trust against the property located at 5058 Joewood Drive, Sanibel, FL 33957. The debt is approximately $578,424.27. The debt is approximately $54,455.99. The property value is estimated to be approximately $1,095,000. The proof of claim filed for this creditor indicates the Debtor is in arrears, but the Debtor disputes that he is behind at all. At this time, nothing shall be paid towards any arrears until such matter is determined. The Debtor will also pay the Allowed Secured Claim of this Creditor pursuant to the terms of the loan agreement and applicable non-bankruptcy law. Until Towd Point has been paid in full amount of its Allowed Secured Claim, it shall retain all of the

---

[1] Select Portfolio Servicing, Inc., is the servicer for the lender and all payments will be mailed to the address provided on the proof of claim.

liens securing its Allowed Claim pursuant to the underlying loan documents against the Residence and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court.  This class is impaired to the extent it is entitled to any arrears payments at this time.

In Class 4 is the Claim of Lafayette Federal Credit Union (hereinafter "Lafayette"), which is secured by a first deed of trust against the property 10801 Glen Road, Potomac, MD. The debt is approximately $1,308,936.78.   The property value is estimated to be approximately $1,800,000. The Debtor will pay the arrears on this property in the amount of $61,399.13 in equal monthly installments amortized over a period of 60 months, until the house is sold, in the amount of $1,023.32.  The Debtor will list this property for sale by April 1, 2019, and anticipates having the property sold no later than July, 2019.

The Debtor will also pay the Allowed Secured Claim of this Creditor pursuant to the terms  of the loan agreement and applicable non-bankruptcy law.  Until Lafayette has been paid in full amount of its Allowed Secured Claim, it shall retain  all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the  Residence and all rights and remedies it possesses under its loan documents and applicable law  without further order of this Court.  This class is unimpaired.

In Class 5 is the Claim of Lafayette Federal Credit Union (hereinafter "Lafayette"), which is secured by a second deed of trust against the property 10801 Glen Road, Potomac, MD. The debt is approximately $421,170.02.   The property value is estimated to be approximately $1,800,000. The Debtor will pay the arrears on this property in the amount of $ 11,976.00 in equal monthly installments amortized over a period of 60 months, until the house is sold, in

the amount of $199.60 over the course of sixty (60) months.  The Debtor will list this property for sale by April 1, 2019, and anticipates having the property sold no later than July, 2019.

The Debtor will also pay the Allowed Secured Claim of this Creditor pursuant to the terms  of the loan agreement and applicable non-bankruptcy law.  Until Lafayette has been paid in full amount of its Allowed Secured Claim, it shall retain  all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the  Residence and all rights and remedies it possesses under its loan documents and applicable law  without further order of this Court.  This class is unimpaired.

In Class 6 are the Claims of unsecured creditors.  The unsecured creditors are as follows:

- American International Export, Inc. ($10,270.05)

- Discover Bank ($1,168.30)

- Capital One Bank ($3,830.27)

- Capital One Bank, N.A. ($13,573.82)

- Verizon ($295.31)

- Lafayette Federal Credit Union ($958,000.00)

- Bank of America ($4,000.00) – No Claim Filed

- Jeremy E. Brown & Red Hammer, LLC ($33,641.97)

The total amount of the unsecured scheduled claims are 1,024,779.60.  The Debtor listed on his schedules that he was disputing the debts of Lafayette Federal Credit Union and Jeremy E. Brown & Red Hammer, LLC. The creditors who have filed proof of claims to date is approximately $976,876.80 (which includes the $958,000 filed by Lafayette, which is disputed). As of the date of this plan and disclosure statement, the bar claims date has passed.

Payments to this class will conclude within sixty (60) months after the effective date. Payments shall commence within one month after the confirmation of the case. Jeremy E. Brown & Red Hammer, LLC have not filed a proof of claim in this matter, and they will not be paid as part of the plan as the claims are disputed. As such, the total claims in issue are $991,137.70.

The Debtor will make payment to holders of Allowed Claims of unsecured creditors, as shown in Exhibit 1, pro rata from future income and voluntary contributions from his wife, in the approximate amount of $396.00 per month for sixty (60) months (or sooner if no amendments to unsecured proof of claims are filed, commencing one (1) month following the sale of the property located on Glen Road. Based on the monthly payments and the proof of claims filed in the case, the total payout of this class is estimated at 2%. However, to the extent that any creditors amend their proofs of claim or any secured creditors file unsecured claims after surrender or sale, the unsecured creditors will likely receive a lower distribution.

Further, the unsecured claim of Lafayette Federal Credit Union in the amount of $958,000 is disputed. With respect to the disputed claims, an amount equal to the disputed creditors pro rata percentage shall be paid by the Debtor into the IOLTA account of its counsel, Justin M. Reiner, Esq., and Axelson, Williamowsky, Bender & Fishman, P.C., to be held pending the resolution of any objection to the disputed claims. In the event that the objections are successful, the money held in trust shall be distributed to the remaining unsecured creditors pro rata. To the extent that the objections are denied (whether in whole or part); counsel for the Debtor shall pay the disputed creditors in accordance with this Court's ruling on the matter. The total unsecured claims in this matter are $991,137.70 Lafayette's Claim represents .966 ($958,000.00/$991,137.70) percent of the total unsecured claims. As such, an amount equal to .0966% shall be paid by the Debtor into counsels IOLTA account

13

on a monthly basis. For purposes of example, in the first calendar year monthly payments of

$396.00, which will begin after the home on South Glen Road is sold, the Debtor shall make

a payment to counsel's IOLTA account for the benefit of Lafayette, in the amount of $382.76

($396.00 * .966%).

 This class is impaired at this time.

## VII. SPECIAL DISCLOSURES AND RISK FACTORS

 A. Creditors' Committee.  No creditors' committee exists in this case.

 C. Means of Funding Plan.  The Plan will be funded from the future income of the

Debtor.

 D. Risk Factors.  The primary risk to creditors under the Plan is any interruption in

the employment of the Debtor.  Nevertheless, the Plan offers creditors a better opportunity

than a chapter 7 liquidation for maximizing the payment of Allowed Claims.

 E. Recommendation.  The Debtors believe that confirmation of the Plan is in the best

interests of the creditors and the estate, and urges each eligible creditor to vote to accept the

Plan.

## VIII.  FULLY ADMINISTERED PLAN

 The Plan

will be deemed fully administered:
 (1) After the completion of the following:
  (A) Six (6) months have elapsed after the entry of a final order of confirmation
   that  has become non-appealable;
  (B) The deposits required by the plan have been distributed;
  (C) The property proposed by the plan to be transferred has been transferred;
  (D) The debtor or the successor of the debtor under the plan has assumed the
   business  or the management of the property dealt with by the plan;
  (E) Payments under the plan have commenced; and
  (F) All motions, contested matters, and adversary proceedings have been
   finally  resolved;
   Or

14

(2) For individual Chapter 11 debtors, upon completion of all play payments; or

(3) At another time specifically defined by the plan.

Debtors will seek to close this Chapter 11 case in compliance with the requirements detailed above.

On the date 5 years after the Effective Date of the Plan and upon completion of payment to those creditors in Class 6, Debtor shall file a motion to reopen his case and to file a motion for entry of a discharge pursuant to 11 U.S.C. Section 1142(B) that provides:

(B)     At any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payment under the plan if –

(i)     The value, as of the effective date if the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii)    Modification of the plan under section 1127 is not practicable; and

(iii)   Subparagraph (C) permits the court to grant a discharge; and

(C) the court may grant a discharge if, after notice and hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –

(i)     section 522(q)(1) may be applicable to the debtor; and

(ii)    there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if he requirements of subparagraph

15

(A) or (B) are met.

Debtor will continue to pay the other classes of creditors outside of the plan as stated above, but the payment in full of these creditors shall not affect the ability of Debtor to obtain a discharge after 5 years from the date of confirmation of the Plan.

**ANDREW ECONOMAKIS**

/s/Andrew Economakis
Andrew Economakis

Respectfully submitted,

**AXELSON,
WILLIAMOWSKY,
BENDER & FISHMAN,
P.C.**

/s/ Justin M. Reiner, Esquire
Justin M. Reiner, 72251
1401 Rockville Pike, Suite 650
Rockville, MD 20852
(301) 738-7679 (T)
(301) 424-0124 (F)
jmr@awbflaw.com
**SPARTAN BUSINESS &
TECHNOLOGY
SERVICES, INC.**

16

## **CERTIFICATE OF SERVICE**

On the 14th day of December, 2018 I hereby certify that I served a copy of the foregoing upon all parties in interest via the courts ECF system, or by regular mail, first class, postage prepaid to the following:

American International Export, Inc.
c/o Marion Dere Muller, Esq.
17 West Jefferson Street
Suite 100
Rockville, Maryland 20850

Bank of America
PO Box 982238
El Paso, Texas 79998

BB&T
PO Box 580048
Charlotte, North Carolina 28258

Capital One
PO Box 71083
Charlotte, North Carolina 28272

Discover
PO Box 71084
Charlotte , North Carolina 28272

Eagle Bank
7815 Woodmont Avenue
Bethesda, Maryland 20814

Jeremy E. Brown
c/o William L. Hancock, Esq.
Simons & Hancock, P.C.
202 S. Randol
Lexington, 24450

Lafayette FCU
3535 University Boulevard
Kensington, Maryland 20895
VIA ECF TO WILLIAM FELDMAN, ESQ wrflaw@aol.com .

Red Hammer, LLP
c/o William Hancock, Esq.
Simons & Hancock, P.C.
202 S. Randol
Lexington, 24450

SPS Select Portfolio
PO Box 65250
Salt Lake City, Utah 84165

Treasury Division Montgomery County
255 Rockville Pike
110 Carroll Street
Suite L-15
Rockville, Maryland 20850

Towd Point Mortgage Trust 2017-5
c/o Kevin R. Feig
BWW Law Group
6003 Executive Boulevard
Suite 101
Rockville, MD 20852
VIA ECF to kevin.feig@bww-law.com

Lynn A. Kohen, Esq.
U.S. Trustee's Office
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770
VIA ECF to lynn.a.kohen@usdoj.gov

/s/ Justin M. Reiner
Justin M. Reiner