IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| IN RE:<br><br>**ANDREW ECONOMAKIS**<br><br>    Debtor | Case No.: 18-16585-LSS<br>Chapter 11 |

## OBJECTION TO DISCLOSURE STATEMENT

John P. Fitzgerald, III, Acting United States Trustee for Region 4, by counsel, files this Objection to the Disclosure Statement.  In further support of this objection, the United States Trustee states as follows:

1.　Andrew Economakis ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on May 15, 2018.  The Debtor has remained in possession of the estate's assets and continues to manage its financial affairs.  11 U.S.C. §§ 1107, 1108.  No unsecured creditors' committee has been appointed.

2.　Under 11 U.S.C. § 1125(b), a debtor has an affirmative duty to provide creditors with a disclosure statement containing "adequate information" to enable a creditor to make an informed judgment about the Plan.  11 U.S.C. § 1125(a)(1).  Section 1125(a)(1) defined "adequate information" in pertinent part as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such

1

> information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

11 U.S.C. §1125(a)(1).

3. "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the Debtor's obligation to provide sufficient data to satisfy the Code standard of "adequate information." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003), *cert. denied*, 541 U.S. 1043, 124 S.Ct. 2172, 158 L.Ed.2d 732 (2004) (*quoting Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). Further, "[c]reditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, therefore the importance of full and honest disclosure cannot be overstated." *Id.* at 232 (*quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996)).

4. In light of the critical importance that a disclosure statement contain adequate information that a reasonable investor would need in order to make an informed judgment about a plan, prior case law has set forth a non-exhaustive list of relevant factors for evaluating the adequacy of a disclosure statement, which include and are not limited to:

> (1) The events which led to the filing of the bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such

> information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' fees and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) actual and projected realizable value from the recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 & n.6 (Bankr. E.D. Pa 2001) (*quoting In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).

5. In this case, the Disclosure Statement does not contain adequate information that a reasonable investor would need in order to make an informed judgment about a plan.

6. On page 10, Class 3, the Disclosure Statement has two amounts for the value of the debt: "The debt is approximately $548,424.27. The debt is approximately $54,455.99." It appears as though the second sentence was inadvertently copied from language describing Class 2 and should be deleted.

7. Class 4 is the Claim of Lafayette Federal Credit Union's ("Lafayette") first deed of trust against 10801 Glen Road, Potomac, Maryland ("Glen Property"). Class 5 is the Claim of Lafayette's second deed of trust against the Glen Property. For Classes 4 and 5, the Disclosure Statement values the Glen Property at $1.8 million, but does not explain how that value was determined. In addition, the Disclosure Statement provides for the payment of arrears to both classes but does not state the total amount of arrears owed to either class. The Disclosure Statement should also provide the amount that the Debtor will pay for the monthly mortgage in addition to the arrearage payment.

8.      For Class 6, the Disclosure Statement does not account for any potential deficiency claim of Lafayette.   The Debtor cannot assume that Class 4 and Class 5 will be paid in full from the sale of the Glen Property.   Based on the values provided in the Disclosure Statement, the equity cushion is thin even if the Glen Property sells for $1.8 million.

9.      On page 13, when discussing the unsecured claims, the Disclosure Statement says that the unsecured claims total $991,137.70, and that Lafayette's unsecured claim of $958,000 is .0966% of the total.   This is clearly a math mistake.   Lafayette's unsecured claim is 96% of the total amount of unsecured claims.

WHEREFORE, in consideration of the foregoing, the United States Trustee respectfully requests that the Court enter an order denying the approval of the Disclosure Statement, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 7, 2019

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
By Counsel:

 */s/ Lynn A. Kohen*
Lynn A. Kohen, Bar No. 10025
Trial Attorney
Office of the U. S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770
(301) 344-6216
(301) 344-8431 (fax)
E-mail: lynn.a.kohen@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that, on the 7th day of March 2019, a copy of the foregoing Objection to the Amended Disclosure Statement was served by ECF notification to:

Justin M. Reiner    jmr@awbflaw.com, jdf@awbflaw.com
William R. Feldman    wrflaw@aol.com, acurtis@wfeldmanlaw.com
Leah Christina Freedman    bankruptcy@bww-law.com, leah.freedman@bww-law.com

And by first-class mail, postage prepaid, to:

Andrew Economakis
11301 South Glen Road
Potomac, MD 20854
Debtor

                                                        */s/   Lynn A. Kohen*
                                                        Lynn A. Kohen